**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Raul PADILLA–MENDOZA,**
**Defendant–Appellant.**

**No. 96–50597.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 7, 1997.

Decided Oct. 6, 1998.

Steven E. Feldman, Rebecca P. Jones, Semel & Feldman, San Diego, CA, for defendant-appellant.

Kimberly A. Walsh, Assistant United States Attorney, San Diego, CA, for plaintiff-appellee.

Before BROWNING, BRUNETTI, and FERNANDEZ, Circuit Judges.

BRUNETTI, Circuit Judge.

A jury convicted Raul Padilla–Mendoza ("Padilla") on one count of aiding and abetting importation of marijuana in violation of 21 U.S.C. §§ 952 and 960. Padilla appeals from his conviction, arguing that the district court erred by refusing to suppress his confession for involuntariness due to excessive pre-arraignment delay under 18 U.S.C. § 3501(c), and by excusing for cause two jurors who indicated during voir dire that they believed that marijuana should be legalized. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

18 U.S.C. § 3501(c) provides a six-hour "safe harbor" after an arrest and before the arraignment during which a confession will not be excludable solely because of delay. *See United States v. Van Poyck,* 77 F.3d 285, 288 (9th Cir.1996). A confession made after the safe harbor period may be excluded solely because of the delay, but there is no requirement that it be suppressed. *Id.; United States v. Halbert,* 436 F.2d 1226, 1234 (9th Cir.1970). The safe harbor may be extended beyond six hours if the delay is reasonable and is due to the means of transportation and the distance to the nearest magistrate. *Van Poyck,* 77 F.3d at 288; *United States v. Wilson,* 838 F.2d 1081, 1084 ( 9th Cir.1988). We will admit a statement made outside of the safe harbor if the delay was reasonable or if public policy concerns weigh in favor of admission. *Van Poyck,* 77 F.3d at 289. The public policy concerns include discouraging officers from unnecessarily delaying arraignments, preventing the admission of involuntary confes-

sions, and encouraging early processing of defendants. *Id.* We review a district court's finding that a pre-arraignment delay was reasonable for clear error. *See Wilson,* 838 F.2d at 1085.

At around 6:10 a.m. on the morning of September 13, 1995, a Border Patrol Agent ("BPA") observed two vehicles, a sedan and a flatbed truck, illegally cross the Mexico–United States border near Jacumba, California. The sedan led the truck on a dirt road until the vehicles reached the highway and they headed in opposite directions. Another BPA stopped the sedan and instructed its driver, Padilla, to exit the vehicle. Padilla was arrested at 6:30 a.m. and taken to the Boulevard Border Patrol substation. Meanwhile, the flatbed truck was stopped and BPAs found a compartment containing packages of marijuana.

Agent Ziegler, of the Drug Enforcement Administration ("DEA"), was notified at his home at 8:10 a.m. He "finished getting ready for work," left his house, and arrived at the San Ysidro DEA office, the office where he was stationed, at 9:30 a.m. Upon his arrival, he promptly called Boulevard to assess the situation, and then made arrangements for getting vehicles and necessary personnel to Boulevard to handle the case. These preparations took "about an hour." He then left San Ysidro at 10:30 a.m. and arrived at Boulevard at noon. Upon arriving at Boulevard, he discovered that another duty call had arisen that required inspection, processing, and investigation. Agent Ziegler testified that the other duty call needed to be addressed in order to determine whether there was probable cause to detain the suspects involved. After completing his obligations on the other duty call, Agent Ziegler interviewed Padilla's cohort, the driver of the flatbed truck, at 1:35 p.m. After that, he interviewed Padilla at 2:15 p.m. During the 45–minute interview, Padilla made the inculpatory statements which he moved to suppress. Agent Ziegler and Padilla left Boulevard at 6:30 p.m. and arrived at the Metropolitan Correctional Center in San Diego at 8:00 p.m. Padilla was arraigned in front of a magistrate the next day.

In denying Padilla's motion to suppress the confession, the district court found that Padilla confessed approximately eight hours after his arrest. The district court found that the delay was reasonable. Specifically, the court found that taking Padilla to the nearest border patrol station, Boulevard, and calling the DEA from there was reasonable; that, although El Centro has a magistrate and is closer to the arrest point than San Diego, the DEA policy of keeping cases within the county in which they arose was reasonable; that Agent Ziegler properly performed his duties and did not deliberately attempt to delay Padilla's presentment to a magistrate in order to obtain a better interview; and that the delay was primarily due to the distance and means of transportation to the nearest available magistrate.

■ We hold that the district court's finding of reasonableness was not clearly erroneous. Contrary to Padilla's contention, this case is not like *Wilson,* 838 F.2d 1081. There, a defendant was questioned by Federal Bureau of Investigation agents until he confessed while arraignments were being conducted one flight upstairs. *Id.* at 1085. Here, the crime was committed in a remote place. The DEA agent who was assigned to the case needed to travel to get to the defendant and needed to transport the defendant. The delay was reasonable and largely due to transportation and distance. Thus, we affirm the district court's denial of Padilla's motion to suppress.

Furthermore, Padilla has pointed to no evidence that suggests that Agent Ziegler prolonged the process in order to obtain a confession from Padilla. In *Wilson,* the implication was clear that the defendant was not going to be arraigned until a confession was obtained. *Id.* Here, the circumstances do not indicate that the agent delayed Padilla's arraignment for any improper purpose. Public policy concerns do not mandate that the confession be excluded.

II.

During voir dire, the district court asked the jurors the following question:

[I]s there any one of you on the—present on the jury panel that feel that our approach to the problem of marijuana is all wrong, that we should not prohibit marijuana, we should permit it like smoking nicotine, something like that? Are there any of you that have that point of view, that the law is just not going down the right track?

Two jurors raised their hands. The court excused them for cause without additional questioning over defense counsel's objections and requests for further voir dire.

Defendant argues that the district court erred in excluding the jurors without further questioning and that the error resulted in the seating of a jury biased in favor of the government. Defendant also argues that since the two jurors would likely have been stricken by the government, the court effectually afforded the government two additional peremptory strikes.

 The central inquiry in determining whether a juror should be removed for cause is whether that juror holds a particular belief or opinion that will " 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt,* 469 U.S. 412, 433, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985) (quoting *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)). We review for abuse of discretion a district court's voir dire procedures and for manifest error a court's findings regarding juror impartiality. *See United States v. Alexander,* 48 F.3d 1477, 1484 (9th Cir.1995); *United States v. Baker,* 10 F.3d 1374, 1403 (9th Cir.1993), *cert. denied,* 513 U.S. 934, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994).

 Here, the district court abused its discretion by making no effort to determine whether the two excluded jurors' beliefs regarding the marijuana laws would impair their performance as jurors. While district courts have broad discretion in this area, that discretion is not without limitation. *See Dennis v. United States,* 339 U.S. 162, 168, 70

S.Ct. 519, 94 L.Ed. 734 (1950) ("In exercising its discretion, the trial court must be zealous to protect the rights of an accused."); *Aldridge v. U.S.,* 283 U.S. 308, 310, 51 S.Ct. 470, 75 L.Ed. 1054 (1931) (stating that the court's discretion is "subject to the essential demands of fairness"). We have not defined the specific actions that a district court must undertake in order to properly determine whether a juror is able to perform impartially, and we do not do so now. However, we do hold that a district court cannot dismiss jurors for cause based solely on their acknowledgment that they disagree with the state of the law that governs the case. The court must make some effort to determine whether the jurors could, despite their beliefs, perform their duties as jurors. To presume that personal beliefs automatically render one unable to act as a juror is improper. *C.f. Witherspoon v. Illinois,* 391 U.S. 510, 515 n. 9, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) (stating, in the capital sentencing context, that "it cannot be assumed that a juror who describes himself as having 'conscientious or religious scruples' against the infliction of the death penalty ... thereby affirms that he could never vote in favor of it or that he would not consider doing so in the case before him.").

 Having concluded that the district court erred, we must still determine whether the error is remediable. Defendant relies heavily on *United States v. Salamone,* 800 F.2d 1216 (3rd Cir.1986), in arguing that the error requires reversal. In *Salamone,* the trial court excluded for cause all jurors who were affiliated with the National Rifle Association ("NRA") from a case involving various firearms charges. *Id.* at 1217. The Third Circuit held that the trial court abused its discretion, noting that "at no time were the excluded jurors questioned as to their ability to faithfully and impartially apply the law" and that "no inquiries whatsoever were directed to the excluded jurors to determine the nature and extent of their commitment to any principles that might have impaired their ability to serve impartially." [1] *Id.* at 1226–

---

1. The government argues that *Salamone* is inapplicable because the jurors there were excluded for their group affiliation, whereas the jurors

here were excluded for their personal beliefs. However, in *Salamone,* the district court asked the jurors if they personally supported the NRA's

27. The court held that "where such a 'manifest abuse of discretion' results in the wholesale exclusion of a particular group, [it is not] necessary for the defendant to affirmatively demonstrate the existence of actual prejudice in the resulting jury panel," and, thus, that "the wholesale, arbitrary and irrational exclusion of jurors with affiliations with the NRA from Salamone's jury is presumptively prejudicial." *Id.* at 1227–28. The court noted that if the situation involved the inadequate questioning of a single excluded juror, that it "might apply a different standard for determining the prejudicial effect of the erroneous exclusion." *Id.* at 1227. The court determined that reversal was appropriate based on reasoning from *Davis v. Georgia,* 429 U.S. 122, 123, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976) (holding that if a venireman who opposes the death penalty but is not "irrevocably committed" is improperly excluded, any subsequently imposed death penalty cannot stand.). *Id.* at 1228.

We recognize the possibility that a district court's abuse of discretion in improperly excluding jurors could be so egregious that the resulting jury is presumptively biased. For example, a presumptively biased jury would probably result if a district court were to exclude without further questioning all jurors who raised their hands when asked, "do any of you disagree with my belief that all drug users and dealers are evil and should be treated accordingly?" *See, e.g., Salamone,* 800 F.2d at 1232 (Stapleton, J., concurring) (reasoning that interests of fairness mandated reversal without reference to whether the defendant was able to demonstrate actual prejudice on the part of the jury as assembled).

However, we reject the notion that the dismissal of the two jurors for cause in our case presumptively resulted in a prejudiced jury panel. The core question here is whether defendant's constitutional right to an impartial jury has been violated. The Supreme Court has stated that "an impartial *jury*

consists of nothing more than '*jurors* who will conscientiously apply the law and find the facts.'" *Lockhart v. McCree,* 476 U.S. 162, 178, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986) (emphasis in original) (quoting *Wainwright,* 469 U.S. at 423, 105 S.Ct. 844). Padilla has presented no evidence that any of the jurors that found him guilty were unable or unwilling to properly perform their duties. The district court's dismissals did not leave a presumptively biased jury. Thus, in this case, without more, we cannot accept defendant's argument that the exclusion of the two jurors resulted in a pro-government jury. *See McCree,* 476 U.S. at 178, 106 S.Ct. 1758 (stating that the same jurors could have ended up on the jury by the "luck of the draw" without in any way violating the constitutional guarantee of impartiality); *Evans v. Lewis,* 855 F.2d 631, 634–35 (9th Cir.1988).

Padilla's argument, under the Sixth Amendment, that the district court's improper exclusion of the two jurors for cause unfairly afforded the government two extra peremptory strikes similarly fails. He is required to show that the jurors as empaneled were not impartial and has failed to do so. *C.f. Alexander,* 48 F.3d at 1483–84.

Accordingly, we AFFIRM Padilla's conviction.

AFFIRMED.

---

principles. *See, e.g., Salamone,* 800 F.2d at 1220. Thus, in essence, the jurors in that case were also excluded because of their beliefs. Nevertheless, it is arguable that the district court in *Salamone* acted in a more constitutionally offensive manner than did the district court here because it made a decision based largely in part on group membership. On the other hand, is it not equally constitutionally offensive for a court to exclude jurors based on their opinions? Fortunately, we need not answer this difficult question here.