**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JAMONN LAMONT LINDSEY,
*Defendant-Appellant.*

No. 09-50459

D.C. No.
2:08-cr-00186-
GAF-1

OPINION

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted
October 5, 2010—Pasadena, California

Filed January 14, 2011

Before: Harry Pregerson, Dorothy W. Nelson and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge D.W. Nelson;
Concurrence by Judge Pregerson

761

**COUNSEL**

Thomas P. Sleisenger, Los Angeles, California, for the defendant-appellant.

April A. Christine, Assistant United States Attorney, Criminal Appeals Section; Mark R. Yohalem, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

**OPINION**

D.W. NELSON, Senior Circuit Judge:

This case concerns the proper remedy for a good faith, erroneous denial of a defendant's peremptory challenge. Due to the district court's error in counting, Appellant Jamonn Lamont Lindsey ("Lindsey") received just nine out of the ten peremptory challenges afforded him by the Federal Rules of

Criminal Procedure. Our circuit precedent provides for automatic reversal under these circumstances. *United States v. Annigoni*, 96 F.3d 1132, 1134 (9th Cir. 1996) (en banc). We conclude, however, that *Annigoni* was effectively overruled by the Supreme Court in *Rivera v. Illinois*, 129 S. Ct. 1446 (2009). Accordingly, we reject *Annigoni*'s automatic reversal rule and review the denial of Lindsey's peremptory challenge under a more deferential standard of review. Finding no reversible error, we affirm Lindsey's conviction.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Lindsey appeals his conviction and sentence for conspiracy, armed bank robbery, and brandishing a firearm during a crime of violence. On May 23, 2008, a grand jury returned a second superseding indictment against Lindsey, charging one count of conspiracy, 18 U.S.C. § 371; one count of armed bank robbery, 18 U.S.C. § 2113(a), (d); one count of brandishing a firearm during a crime of violence, 18 U.S.C. § 924(c)(1)(A)(ii); and one count of forfeiture, 21 U.S.C. § 853, 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c). The indictment charged that Lindsey and two accomplices took approximately $132,464 during their robbery of Banco Popular, located in Wilmington, California. A three-day jury trial was held beginning on February 24, 2009.

At trial, the facts established that Lindsey and two co-conspirators, Jeffrey Gibson and a man known only as "Lil Ball," discussed the robbery in a park the day before the robbery occurred. The three men, masked and armed, entered Banco Popular the next day. Lindsey forced a bank employee, Jorge Padilla, to take him to the vault at gunpoint. At the vault, Lindsey took a large amount of cash, stuffed it in a bag, and fled with his accomplices. The three men left the bank in a stolen gray Toyota and drove to a nearby alley. They then abandoned that vehicle and entered a white SUV, driven by a fourth person. They drove to an apartment to split the proceeds from the robbery. Lindsey bought a Lexus with his

share of the money. The car was later found at his sister's home.

Lindsey's accomplice, Jeffrey Gibson, testified in detail about Lindsey's involvement in the bank robbery. Additionally, a DNA profile from a nylon cap found in the abandoned getaway vehicle matched Lindsey's DNA profile.

The jury returned a verdict of guilty on counts one through three.

Lindsey subsequently filed a motion for new trial, which was denied on May 4, 2009. On September 14, 2009, Lindsey was sentenced to a term of 204 months. This appeal followed.

## II.   PEREMPTORY CHALLENGE

Due to the district court's error, Lindsey received one fewer peremptory challenge than he was due under Rule 24 of the Federal Rules of Criminal Procedure.[1] When the time came for the parties to exercise peremptory challenges, the district court engaged them in the following colloquy:

> COURT: Okay, we were talking about the mechanics of jury selection. I think I've described we've got 12 in the box, six out front. Peremptory is exercised against those in the box. The low-numbered juror out front, whoever is left, goes in to replace the person who has been excused.
>
> When we get to the point where we've only got 11 in the box, then we call seven more names. First name called goes in the box, next six go out front.

---

[1] Rule 24 provides that, in a non-capital felony case such as this one, "[t]he government has 6 peremptory challenges and the defendant or defendants jointly have 10 peremptory challenges." FED. R. CRIM. P. 24(b)(2).

> If a party passes—obviously if you both pass, we're done; we have a jury. If one passes and then the other side continues to exercise peremptories, the question becomes what happens with respect to pass. And as I started to say, there are two ways of handling it. I confer with counsel as to which way they prefer; if you want to preserve the peremptory then future peremptories are only used against newly seated jurors. In other words, so if you want to hoard peremptories, you can hoard them, but you are stuck with whoever was in the jury box then you exercised your pass.
>
> If—the other way and the way I prefer and the way all counsel have wanted it in prior trials—is you lose —the [pass] is a use or lose. So if you pass, you don't have that peremptory any more. Counsel has lost a peremptory, but you can use any other peremptory that [is] left against anyone in the box.

Just before jury selection, defense counsel chose the "use or lose" option. He stated that the other option had been "a little more confusing" to him.

The parties proceeded to exercise their peremptory challenges when voir dire and challenges for cause had been completed. After Lindsey was allowed nine peremptory challenges, the government was given an opportunity to exercise its last peremptory challenge. The government passed, and the district judge stated, "All right. And the defense has no further peremptories." He then instructed the clerk to swear in the jury panel. Defense counsel did not object.

Lindsey argues that this error requires automatic reversal. He contends that the denial of a peremptory challenge falls within the limited class of errors for which there can be no harmless-error review, citing *United States v. Annigoni*, 96 F.3d 1132 (1996) (en banc).

**[1]** In *Annigoni*, the district court had improperly denied defendant his use of a peremptory challenge to strike a juror. *Id.* at 1136. The defense counsel there attempted to exercise a peremptory challenge against an Asian juror. The district court denied the challenge because it believed the challenge was racially motivated and therefore ran afoul of *Batson v. Kentucky*, 476 U.S. 79 (1986). Because the district court based its decision only on "the bare fact of a male juror of Asian heritage," it erred in denying the defendant's peremptory challenge. *Annigoni*, 96 F.3d at 1136 (internal quotations omitted). On en banc review, the issue before us was whether a harmless-error analysis was the appropriate standard of review for the erroneous deprivation of a defendant's right of peremptory challenge. *Id.*

We began our analysis by noting that, although peremptory challenges are not guaranteed by the Constitution, "the right of peremptory challenge is nonetheless an important statutory right that courts have considered vital to an impartial jury trial." *Id.* at 1137. Given this importance, we noted, the Supreme Court "has long maintained that '[t]he denial or impairment of the right is reversible error without a showing of prejudice.' " *Id.* at 1141 (quoting *Swain v. Alabama*, 380 U.S. 202, 219 (1965)). We observed that our court had long followed *Swain*'s remedial principle. *Id.* (citing *United States v. Turner*, 558 F.2d 535, 538 (9th Cir. 1977)). Two recent developments in the law, however, warranted a revisiting of the issue. First, the government argued that "*Batson* and subsequent cases [had] effectively eroded the right of peremptory challenge." *Id.* at 1142. We disagreed, concluding that *Batson* and its progeny merely limited the right of peremptory challenge; they did not evince an intent to abolish it altogether. *Id.* In fact, we noted, "post-*Batson* decisions by the Supreme Court confirm the continuing viability and importance of peremptory challenges as a means of achieving an impartial jury." *Id.* We did not believe that a rule of automatic reversal would punish district courts who were zealous in their enforcement of *Batson*. Finally, we stated that *Batson* had

"left intact that portion of *Swain*" that provided for automatic reversal when the right of peremptory challenge was denied or impaired. *Id.* at 1143.

The second development in the law was the adoption of harmless-error review for trial errors. We also disagreed that this development compelled us to abandon our automatic reversal rule. We gave a number of reasons that, in our view, made the peremptory challenge error ill-suited for harmless error analysis, including that the error does not occur during the presentation of the case to a jury, that it may not be "quantitatively assessed" in the context of other evidence presented, that peremptory challenges could be made in a highly subjective and arbitrary fashion without a litigant being able to prove any bias or hostility, and that a dearth of information concerning jury room events presented an obstacle to such review. *Id.* at 1144-45.

Finally, we rejected the idea that the denial of the right of peremptory challenge had to be categorized as a classic trial error or structural error. Generally, "[i]n determining whether an error is subject to harmless-error analysis, a reviewing court must determine whether the error is a 'classic trial error,' such as the improper admission of evidence." *Id.* at 1143 (internal quotations omitted) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991)). A trial error is properly subject to harmless-error analysis. *Id.* "Structural" errors, by contrast, "affect 'the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *Id.* at 1143 (quoting *Fulminante*, 499 U.S. at 310). Such errors defy harmless-error analysis and require automatic reversal. We did not believe that the case law established a rigid dichotomy between trial and structural errors, but instead concluded that the errors fall on a spectrum. *Id.* at 1144. We determined that we were not obligated to decide whether the peremptory challenge error rose to the level of structure error in order to apply the automatic reversal rule. *Id.*

As our circuit reaffirmed its adherence to the automatic reversal rule in *Annigoni*, the Supreme Court moved steadily in the opposite direction. In *Ross v. Oklahoma*, 487 U.S. 81 (1988), and *United States v. Martinez-Salazar*, 528 U.S. 304 (2000), the Supreme Court held that a defendant's use of a peremptory challenge to cure the trial court's erroneous denial of a for-cause challenge did not warrant reversal at the state or federal level. Because no individuals on the actual jury were removable for cause, the Supreme Court found no violation of the defendants' right to an impartial jury or to due process. *Ross*, 487 U.S. at 86-91; *Martinez-Salazar*, 528 U.S. at 307, 316-17. *Martinez-Salazar* hastened the Supreme Court's retreat further by explicitly disavowing *Swain*. *See* 528 U.S. at 317 n.4 ("[T]he oft-quoted language in *Swain* was not only unnecessary to the decision in that case . . . but was founded on a series of our early cases decided long before the adoption of harmless-error review.").

Last year, the Supreme Court decided *Rivera v. Illinois*, the central opinion in our inquiry here. In *Rivera*, defense counsel sought to use a peremptory challenge against a prospective juror in state trial court. 129 S. Ct. 1446, 1451 (2009). The trial court denied the peremptory challenge on *Batson* grounds, and the challenged juror was seated. The Illinois high court, finding that the record failed to support a prima facie case of *Batson* discrimination, determined that the trial judge erred in denying the defendant's peremptory challenge. *Id.* at 1452. Nevertheless, that court held that the error did not require automatic reversal. It "saw no indication that Rivera had been tried before a biased jury, or even *one* biased juror." *Id.* (emphasis in original) (internal quotations omitted). Applying a harmless-error standard of review, the court found that the challenged juror's presence on the jury did not harm Rivera because any rational trier of fact would have found Rivera guilty of murder on the evidence presented at trial. *Id.*

The Supreme Court affirmed the Illinois high court's decision. The Supreme Court stated that if "a defendant is tried

before a qualified jury composed of individuals not challenge-able for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern." *Id.* at 1453. Such an error also does not require reversal as a matter of federal law. *Id.* at 1455. The Supreme Court specifically rejected the appellant's reliance on *Swain*'s language in arguing for reversal under federal law, finding that it had "disavowed [*Swain*'s] statement" advocating automatic reversal in its earlier decision in *Martinez-Salazar*. *Id.* (citing *Martinez-Salazar*, 528 U.S. at 317 n.4).

**[2]** Finally, the Supreme Court explained that its recent decisions clarified that an error is " 'structural,' therefore 'requir[ing] automatic reversal,' only when 'the error necessarily render[s] a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' " *Id.* (quoting *Washington v. Recuenco*, 548 U.S. 212, 218-19 (2006)). It held that the mistaken denial of a state-provided peremptory challenge did not constitute an error of that magnitude under the circumstances of the case. *Id.*

**[3]** Because no constitutional violation occurred, the Supreme Court noted that states "retain[ed] the prerogative to decide whether such errors deprive a tribunal of its lawful authority and thus require automatic reversal." *Id.* at 1456. Thus, a state may decide, as a matter of state law, that a trial court's mistaken denial of a peremptory challenge is reversible error per se. However, they may conclude, as the state court did in *Rivera*, that the improper denial of a peremptory challenge was harmless error under state law. *Id.*

* * *

**[4]** A three-judge panel must decline to follow circuit precedent when it has been, in effect, overturned by the decision of a higher court. In order to be controlling on the panel, a higher court's decision "need not be identical" to our precedent, but must instead "undercut the theory or reasoning

underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). In cases of clear irreconcilability, "a three-judge panel of this court . . . should consider [itself] bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled." *Id.*

In *Miller v. Gammie*, we examined the effect of an intervening Supreme Court decision on a three-judge panel of this Court. In that case, the Supreme Court had taken an "approach that [was] fundamentally inconsistent with the reasoning of our earlier circuit authority involving immunity for family-service social workers." *Id.* at 892 (citations omitted). Nevertheless, on appeal, a three-judge panel felt itself bound by our prior circuit precedent and chose to follow our own analysis on the absolute immunity question instead of following the Supreme Court's analysis. Sitting en banc, we clarified that, "in circumstances . . . where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." *Id.* at 893. We went on to hold that the Supreme Court's absolute immunity analysis was inconsistent with this circuit's analysis, and it therefore overruled our precedent. *Id.*

After careful consideration, we conclude that we must decline to apply *Annigoni* here and should instead follow the reasoning set forth in *Rivera*. We therefore reject the automatic reversal rule. We come to this conclusion for three reasons.

First, *Annigoni* explicitly relied on *Swain*'s pronouncement that the denial of the right to exercise a peremptory challenge is reversible error without a showing of prejudice. 96 F.3d 1132, 1141 (1996) (quoting *Swain v. Alabama*, 380 U.S. at

219). *Rivera* disavowed that language because it was unnecessary to the decision in *Swain* and was decided long before the Supreme Court's adoption of harmless-error review. *Rivera*, 129 S. Ct. at 1455. We may therefore no longer rely on *Swain*'s pronouncement of an automatic reversal rule.

**[5]** Second, the *Rivera* Court directly undercuts our precedent by determining that the erroneous denial of a peremptory challenge may indeed be subject to harmless-error review. Because the erroneous denial of a peremptory challenge did not offend federal law, the Supreme Court found that states were free to decide that the "improper seating of a competent and unbiased juror . . . could rank as harmless under state law." *Id.* at 1456. This cuts against our conclusion in *Annigoni* that the erroneous denial of a peremptory challenge, by its very nature, was not reviewable under a harmless-error standard.

Third, *Rivera* appears to adhere to the structural error analysis that *Annigoni* declined to undertake with respect to peremptory challenges. *Rivera* specifically states that the mistaken denial of a state-provided peremptory challenge does not, in the circumstances of that case, constitute a structural error. Such a denial therefore did not warrant automatic reversal. *Id.* at 1455.

Lindsey advances three points in favor of following circuit law and applying *Annigoni*'s automatic reversal rule here. First, he contends that Lindsey's case is factually distinguishable from *Rivera* because he was actually deprived of a peremptory challenge rather than limited in how he could use it. Second, he observes that *Rivera* reviewed a state trial court's ruling and did not pass at all on the question of denial of peremptory challenges in federal court. Third, he argues that the *Rivera* Court ultimately determined that states were free to decide the appropriate remedy for the erroneous denial of a peremptory challenge. Just as states retain the discretion to determine the proper remedy for this error, Lindsey argues,

so too have we exercised our discretion in deciding that this error is subject to automatic reversal. Lindsey argues that nothing in *Rivera* disturbed our ultimate holding in *Annigoni*.

Ultimately, we do not believe that these three points weigh in favor of following *Annigoni*. There is no basis for Lindsey's claim that *Annigoni* controls but *Rivera* is inapposite because the two cases are factually the same: in both *Rivera* and *Annigoni*, the defendants were denied a peremptory challenge on *Batson* grounds and the challenged juror was subsequently seated on the jury. Further, we cannot see how Lindsey's situation—in which the district court simply miscounted and gave him only nine peremptory challenges— somehow mandates a different outcome from the *Rivera* defendant's fate. Although the defendant in *Rivera* was allowed the full number of peremptory challenges, he was not allowed to use one challenge against the person he chose. That determination was an error. Therefore, his right to use his peremptory challenges was impaired in the same way as Lindsey's, because Lindsey similarly did not have an opportunity to use one challenge in a way he saw fit. Finally, in *Rivera*, too, the defendant attempted to argue that his factual posture was somehow different from the Supreme Court's prior decisions in *Ross* and *Martinez-Salazar*. The Supreme Court did not agree that these distinctions counseled a different outcome for the defendant, emphasizing that the paramount concern was whether the defendant had been denied due process or tried before a biased jury. That common thread ran through all the cases, and made the Supreme Court's prior decisions relevant to the *Rivera* defendant's arguments. For these reasons, we believe that *Rivera* is not materially distinguishable from Lindsey's case and should apply here.

As to Lindsey's second argument, the fact that the *Rivera* Court reviewed a state court decision, rather than a federal court decision, does not undercut its reasoning. It held specifically that a good faith, erroneous denial of a peremptory challenge does not require automatic reversal, and that holding

conflicts squarely with *Annigoni*. *Rivera*'s reasoning is not unique to the state court system, nor does its holding suggest that the Supreme Court would come to a different conclusion regarding the federal system. It does not matter that the two decisions are not identical. For the reasons explained above, *Rivera*'s reasoning in the state court context applies to this federal case.

**[6]** As to Lindsey's third argument, although *Rivera* left the states free to decide the proper remedy for the error at issue, we cannot in good faith apply *Annigoni*'s holding here. We are not a separate sovereign that may freely prescribe remedies to our own laws absent a federal constitutional violation. Instead, we are an intermediate court within the federal system, and as such, we must take our cue from the Supreme Court. We refer once again to our decision in *Miller v. Gammie*, which instructs us to focus on the *reasoning* and *analysis* in support of a holding, rather than the holding alone. 335 F.3d at 900 (noting that lower courts are "bound not only by the holdings of higher courts' decisions but also by their 'mode of analysis' " (quoting Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. CHI. L. REV. 1175, 1177 (1989)). Setting *Annigoni*'s holding aside for a moment, in our estimation the case's *reasoning* has been fatally undercut by the Supreme Court. *Annigoni*'s conclusion that the denial of a peremptory challenge requires reversal, while technically a conclusion not foreclosed by *Rivera*, is not supported for the reasons stated in *Annigoni*. We therefore decline to apply *Annigoni*'s holding and conclude that the peremptory challenge error in Lindsey's trial does not require automatic reversal.

**[7]** That leads us, then, to the question of what standard of review should apply here. The Supreme Court decided simply that the erroneous denial of a peremptory challenge is not a per se reversible error. We take that to mean that a court may apply the standard of review that is appropriate under the circumstances of the district court's error. We understand the

Illinois high court to have applied harmless-error review in *Rivera* because an objection was made at the time the trial court denied Rivera's peremptory challenge. At Lindsey's trial, by contrast, the judge simply miscounted and told Lindsey his challenges were exhausted. Importantly, Lindsey failed to object, placing the review of his peremptory challenge denial in the well-settled class of errors—forfeited errors—for which plain-error review is appropriate. *See Puckett v. United States*, 129 S. Ct. 1423, 1429 (2009) ("Failure to abide by [the] contemporaneous-objection rule ordinarily precludes the raising on appeal of the unpreserved claim of trial error. [The plain error rule], however, recognizes a limited exception to that preclusion."). We see nothing in the *Rivera* opinion that leads us to believe that plain-error review is not appropriate for the error at issue here.

**[8]** Plain error requires (1) an error, (2) that was plain, and (3) that affected the defendant's substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). If these factors are met, relief should be granted only if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* We have little difficulty concluding that Lindsey cannot establish plain error. Though the district court committed an error that was plain, Lindsey has provided no evidence to establish that his substantial rights were affected. He advances no serious argument of prejudicial error. He does not claim that his jury was biased in any way. "[W]ithout more, 'the loss of a peremptory challenge [does not] constitute[ ] a violation of the constitutional right to an impartial jury." *United States v. Martinez-Salazar*, 528 U.S. 304, 313 (2000) (quoting *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988)). Neither does it rank as an automatically reversible statutory error. We conclude that Lindsey's substantial rights were not affected when he was denied the opportunity to exercise his tenth peremptory challenge and that the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. The district court did not commit plain error in denying Lindsey's last peremptory challenge.

### III.  SUFFICIENCY OF THE EVIDENCE

Lindsey brings a sufficiency of the evidence challenge to his conviction. He argues that no rational jury could have found, beyond a reasonable doubt, that he participated in the armed bank robbery of Banco Popular for two reasons. First, Lindsey notes that the only physical evidence produced to link him to the bank robbery was a DNA match to a nylon cap found in the vicinity of the bank. Second, he contends that Jeffrey Gibson's testimony, which identified Lindsey as one of the robbers, was unreliable.

**[9]** In reviewing a challenge to the sufficiency of evidence in support of a criminal conviction, we must consider whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). "*Jackson* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc). First, we must view the evidence considered at trial in the light most favorable to the prosecution. *Id.* (citing *Jackson*, 443 U.S. at 319). Second, after viewing the evidence in the light most favorable to the prosecution, we "must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *Jackson*, 443 U.S. at 319). At this phase, an appellate court may not " 'ask itself whether *it* believes that the evidence at the trial established guilt,' " but instead must consider whether any rational trier of fact could have made that finding. *Id.* (quoting *Jackson*, 443 U.S. at 318-19).

### A.  Gibson's Testimony

**[10]** Lindsey argues that the only witness called to identify him as a robber was Gibson, his accomplice, whose testimony

was so unreliable that no rational juror could have found it to be credible. Defense counsel cross-examined Gibson in detail about his incentives to cooperate with the government. He also discussed Gibson's lengthy criminal history, his untruthful letters to Lindsey and other individuals, and his inconsistent statements to FBI agents about the crime. Even with these weaknesses, the jury was entitled to believe Gibson's recounting of Lindsey's involvement in the robbery. We "cannot second-guess the jury's credibility assessments; rather, 'under *Jackson*, the assessment of the credibility of witnesses is generally beyond the scope of review.' " *Id.* at 1170 (quoting *Schlup v. Delo*, 513 U.S. 298, 330 (1995)). Viewing the evidence in the light most favorable to the government, Gibson's testimony provided a detailed account of Lindsey's role in the Banco Popular robbery. He testified as to the planning and execution of the robbery. Gibson further provided evidence as to Lindsey's actions after the robbery, including his purchase of a Lexus that was discovered at Lindsey's sister's home. We conclude that this evidence was sufficient for a rational jury to conclude that Lindsey conspired to rob Banco Popular.

### B. Physical Evidence

Lindsey also argues that no physical evidence was produced to link Lindsey to the crime other than a DNA match to a nylon cap found inside the abandoned getaway vehicle close to the bank. He observes that the government failed to produce the stolen money, firearms, or any additional scientific evidence in support of the criminal conviction.

"Under [a] sufficiency of the evidence inquiry, '[c]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction,' but 'mere suspicion or speculation cannot be the basis for creation of logical inferences.' " *United States v. Bennett*, ___ F.3d ___, 2010 WL 3516438, at *7 (9th Cir. Sept. 10, 2010) (quoting *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995)). Therefore, the fact that no physical evidence is presented in support of a

criminal conviction does not, by itself, render the evidence insufficient per se. Here, of course, the government *did* introduce physical evidence—the DNA extracted from a nylon cap in an abandoned car that matched Lindsey's DNA profile.

The jurors heard testimony that a gray Toyota was used as the getaway car and abandoned in an alley. Marcello Aguallo testified that he saw a gray Toyota parked in an alley as he played with his daughter on the day of the robbery. He also saw an SUV leaving the alley. Sergeant Howard testified that he found the gray Toyota, which matched the description of the getaway car, in an alley close to the bank on the day the robbery was committed. Detective Stubbs testified that he recovered a black nylon cap from that same car, and Michael Mastrocovo, a criminalist, testified that the DNA profile from the cap matched Lindsey's DNA profile. Mastrocovo further testified that the probability of a random match was one in ten quadrillion.

**[11]** This evidence, when construed in the light most favorable to the government, raises a reasonable inference that the physical evidence connected Lindsey to the Banco Popular robbery. Lindsey's alternative explanations for the DNA match—that the cap could have been worn during another robbery, by Lindsey's twin at an earlier occasion,[2] or by an actual robber whose partial DNA profile was found on the cap—are unavailing. Viewing evidence in the light most favorable to the government mandates that we not consider the plausibility of "exculpatory constructions" advanced by the defendant. *Nevils*, 598 F.3d at 1167.

**[12]** The DNA evidence presented, in addition to the location of the black nylon cap in the getaway car, reasonably supports the conclusion that Lindsey wore the cap during the robbery and discarded it in the vehicle immediately afterward.

---

[2]Lindsey had an identical twin who died several years before the robbery.

Moreover, this evidence was produced in conjunction with Gibson's testimony and the testimony of several other witnesses. We conclude that a rational jury could convict on this basis.

Lindsey's sufficiency of the evidence challenge is without merit.

## IV.   AGENT ARBUTHNOT'S TESTIMONY

Lindsey argues next that the district court erred in admitting FBI Special Agent Erik Arbuthnot's testimony for two reasons. First, Lindsey contends that Agent Arbuthnot's testimony regarding Gibson's description of the robbery violated the Confrontation Clause.

**[13]** Although Gibson's statements to Agent Arbuthnot qualify as testimonial statements, they do not offend the Confrontation Clause because Gibson himself testified at trial and was cross-examined by Lindsey's counsel. *United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005); *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004) ("[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."). Agent Arbuthnot's testimony concerning Gibson's testimonial statements therefore did not offend the Confrontation Clause.

Second, Lindsey argues that the district court erred under the Federal Rules of Evidence in admitting Agent Arbuthnot's statements about his interviews of Gibson as non-hearsay. A district court's decision to admit evidence as non-hearsay is reviewed for abuse of discretion. *United States v. Alvarez*, 358 F.3d 1194, 1214 (9th Cir. 2004) (citing *United States v. Olafson*, 213 F.3d 435, 441 (9th Cir. 2000)).

Even assuming that the district court made an error in admitting Agent Arbuthnot's statements, the error was harm-

less. Other witnesses, most significantly Gibson himself, testified to the same points that Agent Arbuthnot had discussed with Gibson, including the getaway car and the identity of the robbers. We hold the error, if any, harmless because we do not harbor any " 'grave doubt' " over whether any " 'erroneously admitted evidence substantially affected the verdict.' " *Id.* (quoting *United States v. Ellis*, 147 F.3d 1131, 1134 (9th Cir. 1998)).

## V.   DISMISSING JURORS FOR CAUSE

Lindsey contends that the district court committed reversible error in dismissing two jurors for cause. The district court dismissed prospective jurors 8 and 10. A district court's decision to excuse a juror under these circumstances is reviewed for abuse of discretion. *United States v. Gonzalez*, 214 F.3d 1109, 1112 (9th Cir. 2000) (citing *United States v. Alexander*, 48 F.3d 1477, 1484 (9th Cir. 1995)).

**[14]** We need not reach the issue of whether the district court abused its discretion because the error, if any, does not warrant reversal. Even if the district court had abused its discretion, the dismissal of two jurors did not result in a prejudiced jury panel. In *United States v. Mendoza*, we held that the district court had abused its discretion by making no effort to determine whether excluded jurors' beliefs regarding the state of the law at issue would impair their performances on the jury. 157 F.3d 730, 733 (9th Cir. 1998). Nevertheless, defining the "core question" as "whether defendant's constitutional right to an impartial jury ha[d] been violated," *id.* at 734, we found that the dismissal of two jurors did not result in a presumptively partial jury panel. Because the defendant presented no evidence that any of the seated jurors were "unable or unwilling to properly perform their duties," the dismissals did not warrant reversal. *Id.* Similarly, Lindsey has presented no evidence that the seated jurors in his case were partial or otherwise failed to perform their duties in any way. His claim fails.

## VI.   SUBSTITUTING COUNSEL

Lindsey contends that the district court abused its discretion in denying his request for new appointed counsel, which was made by motion after Lindsey's counsel had already begun his investigation and representation in the case. We review a district court's decision to deny a substitution motion for abuse of discretion. *United States v. Prime*, 431 F.3d 1147, 1154 (9th Cir. 2005).

When reviewing a district court's denial of a substitution motion, we consider three elements: "(1) the timeliness of the motion; (2) the adequacy of the district court's inquiry into the defendant's complaint; and (3) whether the asserted conflict was so great as to result in a complete breakdown in communication and a consequent inability to present a defense." *Id.* (citing *United States v. Castro*, 972 F.2d 1107, 1109 (9th Cir. 1992)).

The second and third factors favor affirming the district court's decision. The district court engaged in a detailed inquiry into the problem. The judge had a closed hearing on the matter to speak with both Lindsey and his counsel. He allowed the attorney to speak about any conflicts with his client, and then "patiently and exhaustively" spoke to Lindsey about the specific problems with the representation he was receiving. *United States v. Smith*, 282 F.3d 758, 763 (9th Cir. 2002).

[15] Under our precedent, the district court conducted a sufficient inquiry into the problems between Lindsey and his counsel. *See Prime*, 431 F.3d at 1155-56; *Smith*, 282 F.3d at 763-64. The judge also properly exercised his discretion on the third factor. Although Lindsey and his attorney both testified that they had difficulty communicating, nothing suggested a "serious breach of trust" or "significant breakdown in communication that substantially interfered with the attorney-client relationship." *United States v. Adelzo-*

*Gonzalez*, 268 F.3d 772, 779 (9th Cir. 2001). Instead, Lindsey displayed a general dissatisfaction with his situation and also appeared to be upset by inquiries that any competent lawyer would undertake, such as questions as to Lindsey's whereabouts on the day of the robbery. We hold that the district court did not abuse its discretion in denying Lindsey's motion to substitute counsel.

## VII.   JURY INSTRUCTIONS

The parties agree that the district court committed an error by reading incorrect jury instructions on the conspiracy count. The parties disagree as to whether the error requires reversal. Where no objection is made to the omission of an essential element of the offense in the charge to the jury, review is for plain error. *United States v. Alghazouli*, 517 F.3d 1179, 1188 (9th Cir. 2008).

Because Lindsey himself proposed the jury instruction he now challenges, the government argues that review should be denied under the invited error doctrine. Our precedent holds that, in order for the invited error doctrine to apply, a defendant must both invite the error and relinquish a known right. *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997). Although Lindsey did stipulate to the erroneous jury instruction, the record does not show that there was ever a discussion about the instruction in any court proceedings or filings. We therefore find that Lindsey did not "affirmatively act[ ] to relinquish a known right," *id.* at 845, and decline to review this challenge under the invited error doctrine. We proceed with plain-error review.

To prove conspiracy, the government must show "(1) an agreement to engage in criminal activity; (2) one or more overt acts taken to implement the agreement, and (3) the requisite intent to commit the substantive crime." *United States v. Sullivan*, 522 F.3d 967, 976 (9th Cir. 2008) (internal quota-

tions omitted). Here, the district court failed to instruct the jury on the overt act element.

**[16]** We find harmless "an instructional error in omitting an element of the offense 'if no rational jury could have made [its] findings without also finding the omitted or presumed fact to be true.' " *United States v. Garza*, 980 F.2d 546, 554 (9th Cir. 1992) (quoting *Martinez v. Borg*, 937 F.2d 422, 425 (9th Cir. 1991)). Here, the jury found Lindsey guilty of armed bank robbery and brandishing a firearm during a crime of violence. These guilty verdicts were "functionally equivalent" to finding the existence of the overt act element in the conspiracy charge. *Id.* We therefore hold that the district court's error was harmless and did not rise to the level of plain error.

## VIII.   CUMULATIVE EFFECT OF ERRORS

As the last point of error for his trial, Lindsey argues that because the evidence in this case was not overwhelming, the cumulative effect of multiple errors warrants reversal. *See United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996) ("In some cases, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant."). We disagree, noting that many of Lindsey's alleged errors are not errors at all. Lindsey's argument is without merit.

## IX.   SENTENCING

Finally, Lindsey objects to three aspects of his sentence. First, he argues that the sentence was unreasonable generally. Second, he argues that the district court wrongly interpreted "physical restraint" in increasing his base offense by two levels. Third, he argues that brandishing a firearm is an offense element that must be proven by a jury, rather than found by a judge as a sentencing factor. Because Lindsey did not raise these errors at the district court, review is for plain

error. *United States v. Knows His Gun, III*, 438 F.3d 913, 918 (9th Cir. 2006).

A.    Reasonableness

**[17]** Lindsey proffers generalized arguments on his reasonableness claim, complaining only that the district court imposed a sentence greater than necessary to meet the requirements of 18 U.S.C. § 3553(a)(2) and that the court failed to give an adequate explanation of its sentencing decision. Lindsey's argument is unavailing. The district court gave explicit and detailed reasons that supported the sentence imposed. The judge stated that he incorporated and included by reference the findings of the recommendation letter provided by the probation office. The recommendation letter contains a detailed analysis of the Section 3553(a) factors and how they apply to this case. Further, the court supplemented the letter with its own reasoning as to the proper sentence in Lindsey's case. It reviewed testimony and concluded that Lindsey's crime was sophisticated, violent, and put many innocent lives at risk. The district court's explanation was adequate and supported the sentence imposed. *See Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Carty*, 520 F.3d 987, 992 (9th Cir. 2008) (en banc).

B.    Physical Restraint

**[18]** Lindsey argues that the district court erred in increasing his base offense by two levels because he physically restrained the branch manager during the robbery. The bank manager testified that he was forced to walk to the vault at gunpoint and felt the gun barrel on his back several times. In *United States v. Thompson*, we concluded that forcing a bank employee to walk from the teller area to a vault at gunpoint amounted to physical restraint of a victim. 109 F.3d 639, 641 (9th Cir. 1997); *see also United States v. Parker*, 241 F.3d 1114, 1118 (9th Cir. 2001). The circumstances in this case are indistinguishable.

Lindsey's alternative argument that the two-point enhancement constitutes double-counting has been foreclosed by *United States v. Nelson*, 137 F.3d 1094, 1112 (9th Cir. 1998).

## C. Brandishing

**[19]** Based on its finding that Lindsey brandished a firearm during the robbery, the district court imposed a seven-year mandatory minimum consecutive sentence. Lindsey argues that brandishing is an offense element to be proven by a jury, rather than a sentencing factor within the judge's purview. The Supreme Court recently reaffirmed, however, that enhancements for brandishing or discharging a firearm are "sentencing factors to be found by a judge." *United States v. O'Brien*, 130 S. Ct. 2169, 2179 (2010) (citations omitted). The district court properly treated brandishing as a sentencing factor rather than as an element of the offense.

## X. CONCLUSION

In sum, we find that the Supreme Court's decision in *Rivera* effectively overruled our circuit precedent. Following *Rivera* and applying a plain-error standard of review here, we conclude that the district court's erroneous denial of Lindsey's last peremptory challenge did not constitute reversible error. We also find Lindsey's other points of error to be unfounded. For the reasons stated in the opinion, Lindsey's conviction and sentence are **AFFIRMED**.

**AFFIRMED.**

---

PREGERSON, Circuit Judge, concurring:

I write separately because, unlike the majority, I believe this case can be resolved without deciding whether *Rivera v. Illinois*, 129 S. Ct. 1446 (2009), overrules *United States v.*

*Annigoni*, 96 F.3d 1132, 1134 (9th Cir. 1996) (en banc). *Annigoni* is inapposite to Lindsey's case: *Annigoni* concerned a defendant who was actively prevented by the district court from exercising a peremptory challenge, whereas Lindsey simply failed to exercise a peremptory challenge to which he was entitled.

*Annigoni* re-affirmed the principle in this circuit that the erroneous denial or impairment of a defendant's right of peremptory challenge requires automatic reversal. 96 F.3d at 1141. In that case, the defendant attempted to exercise a peremptory challenge but the district court prevented him from doing so, erroneously concluding that the challenge was racially motivated. *Id.* at 1135-36.

No such circumstance exists in this case. Unlike the defendant in *Annigoni*, Lindsey made no attempt to exercise his final peremptory challenge. When the district court stated, "the defense has no further peremptories," the defense was silent and raised no objection. Presumably, had Lindsey's counsel reminded the court that he had one peremptory challenge left, the court would have allowed him to exercise that challenge. Thus, the district court did not deny or impair Lindsey's right to exercise peremptory challenges, but simply made a counting error that the defense failed to correct.

It is reasonable to assume that the defense had no objection to any of the remaining jurors, and had no need to exercise the final peremptory challenge. Even on appeal, Lindsey raises no objection to any of the seated jurors.

Thus, unlike in *Annigoni*, the defendant does not claim that the jury would have been differently constituted if not for the court's innocent error. Because *Annigoni* is inapplicable to this case, Lindsey is entitled to nothing more than the level of appellate review we apply to any claim not raised before the district court: plain-error review.

Because the majority agrees that plain-error is the appropriate standard, and agrees that under that standard Lindsey's claim fails, I concur in the result of the majority opinion. There is no need for us to consider whether *Rivera* has upended *Annigoni*.