FILED

MAR 07 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 10-50411 & 10-50412 |
| Plaintiff-Appellant, | D.C. Nos. 2:09-cr-00292-GAF-4,5 |
| v. | |
| HUEY L. NELSON, AKA BABY HUEY | MEMORANDUM[*] |
| AND | |
| ELVIN HARRIS, AKA BABY LUCKY, | |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Gary A. Feess, District Judge, Presiding

Argued and Submitted January 12, 2012
Pasadena, California

Before: REINHARDT and W. FLETCHER, Circuit Judges, and ZOUHARY, District Judge.[**]

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]      The Honorable Jack Zouhary, District Judge for the Northern District of Ohio, sitting by designation.

The trial court set aside the jury verdict convicting two criminal defendants, Huey Lynn Nelson and Elvin Harris ("Defendants"), of: (1) conspiracy to possess with intent to distribute cocaine (21 U.S.C. §§ 846 and 841(b)(1)(A)(iii)); (2) conspiracy to interfere with commerce by robbery (18 U.S.C. § 1951); and (3) use of a firearm during a drug trafficking crime (18 U.S.C. § 924(c)). Defendants were convicted along with co-conspirators Shane Mullins and Darris Hurth as part of a sting operation executed by the ATF and Darrin Whitmore ("Agent"), an undercover agent who feigned participation in the scheme to rob a cocaine stash house. Adrian Evans, another co-conspirator to the charged offenses, was not indicted in this case.

The district court found the evidence against Defendants insufficient to support the jury verdict and granted acquittal under Federal Criminal Rule 29. The Government timely appealed. We have jurisdiction under 18 U.S.C. § 3731.

The Government concedes its evidence is "not overwhelming," but contends it was sufficient for a rational juror to conclude, beyond a reasonable doubt, that Defendants were knowing participants in the planned robbery of a stash house. Most of the evidence is circumstantial and relies on inferences from audio recordings, the Agent's trial testimony, co-conspirator statements, and events on the day of the arrest.

Viewed in the light most favorable to the Government, as required by Rule 29, we find the evidence was sufficient for a rational juror to link Defendants to the stash-

2

house robbery conspiracies. *See United States v. Nevils*, 598 F.3d 1158, 1163–64 (9th Cir. 2010) (en banc); *United States v. Perlaza*, 439 F.3d 1149, 1177 (9th Cir. 2006).

The record includes co-conspirator statements that Defendants knew of the plan to rob the stash house. *See United States v. Lindsey*, 634 F.3d 541, 552 (9th Cir. 2011) (holding co-conspirator's statements were sufficient to support defendant's conspiracy conviction). For instance, during a conversation at a car wash, Mullins told the Agent he was going to send his "little homeboy" and "they going boom, boom, boom" to "get that shit" (i.e., cocaine). Although Mullins never used specific names, the jury could infer he was referring to Defendants. According to Mullins and Evans, the "two boys" had their own guns and were the only ones with weapons. During the arrest, an ATF team member witnessed Defendant Harris toss a "dark object" as he fled, an object later identified as a gun. A second gun was recovered at the arrest location, confirming co-conspirator statements that both Defendants would be armed.

Further, Mullins told the Agent that his "two boys around the corner" were armed and waiting. When the crew drove down to "the corner," the two Defendants joined them along with Hurth who arrived alone. Mullins then walked toward Defendants -- his "two boys" -- and the Agent had a brief conversation with them. The Agent asked if Defendants were "cool" with the plan, if they were "all about the

3

business." Evans, in Defendants' presence, responded by telling the Agent, "they good, they good." Defendant Harris confirmed, stating "yeah, it's all right."

After this meeting, the crew and Defendants drove to a warehouse, a rendezvous point prior to the robbery. The Agent again asked if everybody, including Defendants, knew "what's going on." Evans assured the Agent once more that everybody was "straight." During the drive, Evans also confirmed the entire crew, including Defendants, knew each other, had "pretty much done this before," and knew some of the plan details, including tying up the Agent with the stash-house occupants to avoid suspicion.

After the crew arrived at the warehouse, the Agent began to tell co-conspirator Hurth, who was sitting in his car, his cover story and the plan. The Agent testified Defendants appeared to be paying attention when Hurth confirmed, as Evans and Mullins had done previously, that everybody knew "the deal." According to the district court, the Agent's testimony that Defendants appeared to be paying attention was "not consistent with his overall description of the event" and was unpersuasive because there was no evidence Defendants were in a position to hear anything that was said. While the court's interpretation of the evidence is plausible, so was the Agent's testimony. Conflicting inferences and credibility are issues for the jury. *Nevils*, 598 F.3d at 1164, 1170.

Sufficient evidence was produced to support the inference Defendants were aware of the robbery plan. The fact that Defendants may not have known the specific drug and quantity involved does not change that conclusion. *See United States v. Sua*, 307 F.3d 1150, 1155 (9th Cir. 2002) (holding defendant's knowledge of the drug type and quantity in a conspiracy was not necessary for conviction).

Co-conspirator statements were corroborated by independent evidence stemming from Defendants' actions and statements. As explained above, two guns were recovered at the arrest scene, one of which was seen in Defendant Harris' possession. Defendants arrived wearing dark clothing, and the robbery was planned to begin after sunset and conclude within minutes of the end of civil twilight. Gloves recovered at the arrest location were linked to those worn by Defendants.

Defendants also made several statements linking themselves to the conspiracies. As discussed above, Defendant Harris told the Agent he was "all about the business" and responded "all right" when asked if he wanted to participate in the plan. The Agent testified both Defendants acknowledged they knew the story, and that either Nelson or Harris, with the other present, confirmed they knew the plan.

The district court speculated Defendants' responses to the Agent could be understood as dodges to avoid acknowledging they were clueless pawns in the robbery scheme. In doing so, however, the district court misapplied the appropriate standard

5

and "usurp[ed] the role of the finder of fact." *Nevils*, 598 F.3d at 1164. Instead of giving appropriate deference to the jury's inferences and weighing the evidence in a light most favorable to the Government, the court provided its own explanation as to why Defendants' statements were not probative.

Defendants cite *United States v. Melchor-Lopez*, 627 F.2d 886, 891 (9th Cir. 1980), for the proposition that statements by case agents expressing doubts concerning the sufficiency of the proof constitute a basis on which courts have found insufficient evidence for a conspiracy conviction. *Melchor-Lopez*, however, does not stand for such a broad-reaching proposition. In that case, there was direct evidence in an undercover agent's report that an agreement to sell drugs was *not* reached. Here, there is no such evidence. To the contrary, the Agent testified he understood Defendants "were ready to conduct the home-invasion robbery" and "indicated they wanted to go forward" with the plan.

In granting acquittal, the district court relied in part on the absence of evidence as to ownership of the guns recovered at the warehouse. The court also noted that, despite the plan for the crew to tie up the Agent with others at the stash house, none of the conspirators were found with tape, rope, or other means of restraint. This lack of evidence, however, does not undermine the sufficiency of the evidence. *See Lindsey*, 634 F.3d at 552 ("[T]he fact that no physical evidence is presented in support

6

of a criminal conviction does not, by itself, render the evidence insufficient per se."). As mentioned above, there is ample other evidence that Defendants were knowing participants in the robbery plan.

The district court also speculated Mullins and Hurth were motivated to keep the details of the robbery to themselves. The court listed multiple reasons why Mullins and Hurth *might* have kept Defendants in the dark. In doing so, the court impermissibly considered "how it would have resolved the conflicts, made the inferences, or considered the evidence at trial." *Nevils*, 598 F.3d at 1164. The court also noted the Government's investigation was fraught with mistakes, but this finding too goes to credibility determinations -- a task assigned to the jury -- which should play no part in a sufficiency of the evidence analysis.

In sum, this is the very type of case where a jury could have found in favor of the Government or Defendants. The Government presented evidence, direct and circumstantial, that Defendants arrived at the appointed time and place wearing dark clothing and gloves, carrying firearms, spoke to the Agent about the plan, albeit briefly, and followed the robbery crew to the warehouse where further discussions about the planned robbery took place. This Circuit has long recognized the sufficiency of the evidence standard is "extremely deferential" to the jury. *See, e.g.*, *Bean v. Calderon*, 163 F.3d 1073, 1087 (9th Cir. 1998). A jury's verdict must stand

7

unless evidence, properly construed in the Government's favor, is "so supportive of innocence that no rational trier of fact could find guilt beyond a reasonable doubt." *See Nevils*, 598 F.3d at 1169 (citation omitted).

This case does not present such a situation. The district court understandably struggled with the lesser amount of evidence against these Defendants when compared to others in the conspiracies, but erred by failing to construe the admittedly thin evidence in a light favorable to the Government, and by engaging in credibility determinations more appropriately left to the jury.

For the above reasons, this case is REVERSED and REMANDED. The district court is instructed to reinstate the verdict and reenter judgments of guilty against both Defendants. *See United States v. Ramos*, 558 F.2d. 545, 548 (9th Cir. 1977).